IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE  DIVISION
1:08CV78-01-MU

MICHAEL ROBERTS,                              )
                                             )
           Plaintiff,                         )
                                             )
      v.                                      )
                                             )          **O R D E R**
STATE OF NORTH CAROLINA, <u>et al.</u>,       )
                                             )
           Defendants.                        )
_____ )


      **THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment

(Doc. No. 41), filed January 28, 2009.

      For the reasons provided herein, Defendants' Motion for Summary Judgment is granted and

Plaintiff's Complaint is dismissed.

                          <u>**PROCEDURAL HISTORY**</u>

      On March 3, 2008, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging a claim

of deliberate indifference to a serious medical need.  More specifically, Plaintiff alleged that while

he was housed at the Cleveland County Detention Center (CCDC) from June 4, 2006 through July

13, 2006,  his crutches[1] were taken away even though he had a "decubitus ulcer' on his foot and his

requests for medical attention were ignored.  As a result, Plaintiff alleges that his leg was amputated

sometime after he was released from jail.

_____

      [1] The medical records make no mention of crutches.  The Inmate screening form does
indicate that Plaintiff typically wore braces on his legs below his knees but that upon arrival he was
wearing a brace only on his right leg due to the wound on his left heel. (Bumgarner Aff. Ex. 1.)

After conducting an initial review of Plaintiff's Complaint, this Court dismissed, for the reasons set forth in its April 22, 2008, Order the CCDC, the State of North Carolina, the Warden, and the Medical Director. As only unnamed medical personnel remained, this Court ordered the CCDC to provide the Court and Plaintiff with the identity of all medical personnel who treated Plaintiff during his incarceration at the facility. This Court also ordered Plaintiff to inform this Court within fifteen days of receiving these names which individuals he wished to name as defendants.

The CCDC responded on May 1, 2008, that only one medical personnel had treated Plaintiff while he was incarcerated and that was nurse Kim Jackson. In response to this information, Plaintiff filed a Motion for Appointment of Counsel, a Motion to Produce Documents, and a Motion for Reconsideration all of which were denied. In addition, Plaintiff fled a Motion for Extension of Time to Amend Complaint which was granted.

On June 24, 2008, Plaintiff filed a Motion to Amend seeking to add Nurse Kim Jackson as a defendant. In addition, Plaintiff set forth more detailed facts with regard to his claim against Kim Jackson. This Court granted Plaintiff's Motion to Amend. On September 24, 2008, Plaintiff filed another Motion to Amend seeking to add Laurie Bumgarner as a defendant. On October 1, 2008, this Court ordered Ms. Bumgarner to be added as a defendant.

## FACTS

Plaintiff was evaluated at the Cleveland County Detention Center (CCDC) for his initial inmate screening on June 3, 2006. (Jackson Aff. ¶ 5 and Ex. 1 at 7[2].) On June 4, 2006, Elaine Breakfield , a nurse at CCDC, evaluated Plaintiff. (Jackson Aff. ¶ 6 and Ex. 1 at 9.) At that time, Plaintiff was wearing a brace on his right leg and had a pressure ulcer on the heel of his left foot.

---

[2] Page number references are to Bates Stamped numbers on the documents.

(Id.) Plaintiff reported that he had been receiving medical care to treat an ulcer on his left heel prior to his incarceration. (Id.) Nurse Breakfield contacted Defendant Bumgarner for further treatment orders. (Id.) On June 5, 2006, Defendant Bumgarner, a medical doctor, placed a telephone order instructing the nursing staff to check Plaintiff's blood pressure daily, to obtain a copy of Plaintiff's medical records[3] and to apply a wet to dry dressing change every day to Plaintiff's left heel. (Bumgarner Aff. ¶ 8; Jackson Aff., Ex. 1 at 3.)[4]

Pursuant to Defendant Bumgarner's orders, on June 5, 2006, the nursing staff began daily wet to dry dressing changes to Plaintiff's left heel. (Jackson Aff. ¶ 8.) From June 5, 2006, to July 3, 2006, with the exception of a few isolated days when Plaintiff was unavailable for treatment due to detention officer staffing issues, Plaintiff's dressing was changed. (Id. ¶¶ 8-39 and Ex. 1 at 9-15.) The condition of Plaintiff's heel wound initially improved over the course of these wet to dry treatments. (Id. ¶ 16 and Ex. 1 at 11.) However, on July 3, 2006, Defendant Jackson noted a brown drainage coming from the wound. (Id. ¶ 39 and Ex. 1 at 15.) Thereafter, Defendant Jackson contacted Defendant Bumgarner for further orders. (Id.) In response, Defendant Bumgarner updated Plaintiff's treatment plan to include the daily application of Biafine cream to the area. (Bumgarner Aff. ¶ 10; Jackson Aff., Ex. 1 at 3.) From July 5, 2006, to July 13, 2006, when Plaintiff was released on bond, Plaintiff's heel dressing was changed daily, with the exception of July 7, 2006, and Biafine cream was applied to the wound. (Jackson Aff. ¶¶ 40-48 and Ex. 1 at 15-18.)

---

[3] On June 5, 2006, Defendant Jackson, a nurse, requested Plaintiff's medical records from his private physician. (Jackson Aff. ¶ 7 and Ex. 1 at 5.) On June 7, 2006, Defendant Jackson received these records. (Id. at 10.)

[4] Defendant Jackson recommended that Plaintiff be housed in the annex section of the CCDC as it was better equipped to handle inmates with special needs such as Plaintiff's. (Jackson Aff. 10.)

Throughout his incarceration, Plaintiff was repeatedly instructed that it was imperative to keep the ulcerated area on his left heel dry.[5] (Jackson Aff. ¶ 23.) Nevertheless, the nursing staff on occasion found the dressing on Plaintiff's left foot to be wet. (Jackson Aff. ¶¶ 23, 24, 45, 46, and Ex. 1 at 12.) In response, Defendant Jackson requested that Plaintiff be allowed early morning shower privileges so that even if Plaintiff continued to ignore instructions to keep his foot dry, the nursing staff could change the dressing after the shower and have the affected area stay dry most of the day. (Jackson Aff. ¶ 44.) Staff allowed this request, but on July 12, 2006, Defendant Jackson noted that Plaintiff's wound was not improving on the outer edge because Plaintiff continued to wet his foot in the shower. (Jackson Aff. ¶ 46.)

On June 27, 2006, at Plaintiff's request, Defendant Jackson inspected Plaintiff's wound to determine if debriding was needed. (Jackson Aff. ¶ 34 and Ex. 1 at 14.) Defendant Jackson noted that debriding might be needed if Plaintiff remained at CCDC for an extended period of time but that there was still an opportunity for healthy tissue to form. (Jackson Aff. ¶ 34 and Ex.1 at 14.) Defendant Jackson determined that the current course of treatment should be continued and the area monitored for signs of improvement. (Jackson Aff. ¶ 34 and Ex. 1at 14.)

On July 10, 2006, Defendant Jackson received a note that Plaintiff had voiced complaints about being forced to walk on his foot during recreation. (Jackson Aff. ¶ 44 and Ex. 1 at 16.) In response to Plaintiff's complaint, Defendant Jackson requested that Plaintiff be placed on bed rest so that he would no longer be required to walk on his foot. (Jackson Aff. ¶ 44 and Ex. 1 at 16.)

On July 12, 2006, Defendant Bumgarner physically examined Plaintiff. (Bumgarner Aff. ¶

---

[5] The nursing staff also informed detention center officers of the need to keep Plaintiff's left heel dry. Once so informed, when requested by the inmate the staff provides the inmate with a plastic bag to place over the affected area during a shower.

11.) Defendant Bumgarner noted that the foot and heel area continued to present skin thickening, hypertrophy, and plaque, problems which Plaintiff indicated had been bothering him for over a year. (Bumgarner Aff. ¶ 11; Jackson Aff., Ex. 1 at 17.) Defendant Bumgarner also noted that the heel was boggy but that the ulcerated area had improved at CCDC compared to Plaintiff's pre-incarceration status. (Bumgarner Aff. ¶ 11.)

On July 13, 2006, Plaintiff was released from CCDC. Plaintiff was notified that he needed to follow up with his private physician for his wound care. (Jackson Aff. ¶ 49 and Ex. 1 at 18.) Nurse Emmerson prepared a written summary outlining Plaintiff's course of treatment at CCDC and a written synopsis was provided to Plaintiff. (Jackson Aff., Ex. 1 at 19.)

## ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 106 (1986); Celotex Corp. v. Catrett, 477 U. S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.

In opposing a summary judgment motion, the "non-moving party must do more than present a mere "scintilla" of evidence in his favor. Rather, the non-moving party must present sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence for the non-movant." Sylvia Dev. Corp. v. Calvert County Md., 48 F.3d 810, 818 (4th Cir.

1995)(quoting <u>Anderson</u> , 477 U.S. at 249-50).  An apparent dispute is "genuine" only if the non-

movant's version is supported by sufficient evidence to permit a reasonable jury to find in its

favor.  <u>Id.</u>  "If the evidence is merely colorable, or is not significantly probative, summary

judgment must be granted."  <u>Anderson</u>, 477 U.S. at 249.

**B. <u>Deliberate Indifference</u>**

To establish an Eighth Amendment violation based on inadequate medical care, an

inmate must show that defendants acted with "deliberate indifference to serious medical needs."

<u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Deliberate indifference is demonstrated by either an

actual intent to cause harm, or reckless disregard of substantial risk of harm that is either known

to the defendant or would be apparent to a reasonable person in defendant's position.  <u>Miltier v.</u>

<u>Beorn</u>, 896 F.2d 848, 851-52 (4th Cir. 1990).  In either case, however, the indifference must be

substantial: inadequate treatment due to negligence, inadvertence, or differences in judgment

between an inmate and medical personnel does not rise to the level of a constitutional violation.

<u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

In response to the broad allegations in Plaintiff's Complaint,[6] Defendants have filed a

thorough Motion for Summary Judgment detailing the extensive medical treatment received by

Plaintiff during his incarceration at CCDC.  Despite Plaintiff's blanket protestations to the

contrary, the uncontroverted facts establish that medical personnel at CCDC, including the

defendants,  were not deliberately indifferent to Plaintiff's medical needs.  <u>Banueulos v.</u>

---

[6] Interestingly, Plaintiff, who filed his Complaint over eighteen months after his release from CCDC, never specifies when his foot was amputated.  Nor does Plaintiff provide any copies of medical records detailing the condition of his wound and the treatment he received after he was released.

McFarland, 41 F.3d 232, 235 (5th Cir. 1995)("[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.")  In response to his existing wound, Defendant Bumgarner ordered and received Plaintiff's past medical records concerning the care of his foot.  Moreover, over the course of Plaintiff's approximately forty day incarceration at CCDC he was seen almost every single day to have his dressing changed.  In addition, in response to Plaintiff's failure to keep his foot dry while showering Defendant Jackson changed his shower time to improve the situation.  Moreover, in response to a complaint by Plaintiff about walking on his foot Defendant Jackson ordered him on bed rest to avoid that problem.  Consequently, the medical records conclusively demonstrate that Defendants were not deliberately indifferent to Plaintiff's medical needs.

        **THE COURT HEREBY ORDERS** that:

        1. Defendants' Motion for Summary Judgment is **GRANTED**; and

        2. Plaintiff's Complaint is **DISMISSED**.

        Signed: May 19, 2009

Graham C. Mullen
United States District Judge